Elizabeth M. Soveranez, SBN 024009
Kyle R. Broadfoot, SBN 037134
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone:  602-778-3700
Fax:  602-778-3750
elizabeth.soveranez@ogletree.com
kyle.broadfoot@ogletree.com

*Attorneys for Plaintiffs Ares Collective Group, LLC, Flora's Market Run, and Plaintiffs Restaurant, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Ares Collective Group, LLC; Flora's Market Run; and Prep and Pastry Restaurant, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>National Labor Relations Board, a federal administrative agency; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; and Sharon Steckler, in her official capacity as an Administrative Law Judge of the National Labor Relations Board,<br><br>    Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Ares Collective Group, LLC, Flora's Market Run, and Prep and Pastry Restaurant, LLC (collectively, "Plaintiffs")[1] bring this action for declaratory and injunctive relief and alleges as follows:

---

[1] Ares Collective Group, LLC is not an employer and has no employees. However, because it was named in the Second Amended Consolidated Complaint, Plaintiffs move on behalf of all entities.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

# INTRODUCTION

1. This action arises out of, and seeks to preliminarily and permanently enjoin, an unlawful attempt by the National Labor Relations Board ("NLRB") to subject Plaintiffs to an unconstitutional administrative proceeding in violation of Article II, the Fifth Amendment, and the Seventh Amendment of the United States Constitution.

2. "The executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 3. The President "must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

3. As part of this responsibility, the President must have the power to remove inferior officers who assist in carrying out the President's executive powers. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

4. "The President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Id.* at 484. As James Madison stated on the floor of the First Congress, "if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong. 463 (1789).

5. The Supreme Court has previously held that Congress cannot limit the President's Article II removal authority where officers who carry out "substantial executive authority" are "protected by two layers of for-cause removal." *Free Enter. Fund*, 561 U.S. at 514.

6. NLRB Administrative Law Judges ("ALJs"), similar to the ALJs in the Securities and Exchange Commission ("SEC"), are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because, among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

2

7. NLRB ALJs are protected by two layers of for-cause removal, insulating these ALJs from constitutionally required Presidential oversight. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a).

8. Because NLRB ALJs are insulated from the President's control by two layers of for-cause removal protections, and because they are inferior officers, the NLRB ALJs having two layers of removal protection is unconstitutional. *See Free Enter. Fund*, 561 U.S. at 514.

9. Similarly, the NLRB's Board Members enjoy unconstitutional removal protections, though they exercise substantial executive power in issuing binding rules, adjudicating unfair labor practices and representation disputes, issuing subpoenas, and deciding whether and how to direct and conduct elections in representation cases.

10. The President may only remove NLRB Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

11. The NLRB, through its Board Members, has the executive power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may . . . find necessary for the proper performance of its duties." 29 U.S.C. § 154; *see also* U.S. Const. art. II. § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the Heads of Departments."). Through this authority, the Board appoints Regional Directors, who oversee the NLRB's twenty-six regional offices.

12. The NLRB's Board Members' removal protections are unconstitutional under *Humphrey's Executor v. United States*, 295 U.S. 602, 627–28 (1935), because *Humphrey's Executor* applies only to those agency officials who do not exercise "executive power in the constitutional sense." *Id.* at 628.

13. In addition to the executive powers listed above, the NLRB's Board Members also "have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair

labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j).

14. The NLRB's Board Members more generally enforce and implement the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

15. The NLRB, through its Board Members, exercises substantial prosecutorial—and executive—authority.

16. The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies take legislative and judicial forms, they are exercises of, and must be under, our constitutional structure and they *must be* exercises of, the 'executive Power.'" *Seila Law*, 140 S. Ct. at 2198 n.2 (citation and internal quotations omitted).

17. The NLRB's Board Members, then, who are Principal Officers that exercise substantial executive authority but are only removable for cause by the President, are unconstitutionally insulated from the President's removal powers and control.

18. The harms inflicted by unconstitutional removal protections are twofold: (1) the President's constitutional authority is unlawfully limited; and (2) the NLRB is free to operate on regulated parties without the "degree of electoral accountability" required by the United States Constitution. *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

19. Because parties across the country, including Plaintiffs, are regulated by—and subject to administrative proceedings before—the NLRB, whose Board Members are unconstitutionally insulated from Presidential removal powers, Plaintiffs are "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

4

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

20. The Court should, therefore, enjoin the NLRB's current proceedings against Plaintiffs, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against Plaintiffs before agency officials, including an NLRB ALJ, who are unconstitutionally insulated from Presidential oversight.

21. The constitutional infirmities do not end there. The NLRB's proceeding against Plaintiffs violates the Seventh Amendment to the United States Constitution, which preserves the "right to trial by jury" in "[s]uits at common law." U.S. CONST. amend. VII.

22. "The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (internal citation and quotations omitted).

23. The Seventh Amendment right to trial by jury "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id.* (internal citation omitted). Put differently, the right attaches in suits seeking a "common law remedy." *Id.* at 2129.

24. While the NLRB has long awarded backpay—an equitable remedy when restitution-based—the NLRB has recently broadened its own authority and now claims to possess the power to award traditional forms of legal relief. *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022).

25. Indeed, in its proceeding against Plaintiffs, the NLRB seeks "payment for consequential economic harm [Charging Party in the NLRB proceeding] incurred" as a result of Plaintiffs' alleged unlawful conduct. [Second Amended Consolidated Complaint, attached as **Exhibit 1**.]

26. "[M]oney damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2128.

27. While the NLRB here claims for itself power to subvert the Seventh Amendment without Congressional authorization, even Congress itself could not "conjure

5

away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

28. "Even when an action originates in a newly fashioned regulatory scheme, what matters is the substance of the action, not where Congress has assigned it." *Jarkesy*, 144 S. Ct. at 2135. Thus, the fact that the NLRB may constitutionally be able to seek equitable remedies in its in-house proceedings is of no consequence.

29. Because the NLRB here seeks money damages—legal relief—for an alleged statutory violation, the Seventh Amendment prohibits the NLRB from seeking such relief before an ALJ rather than a jury. *Id.* at 2139.

30. Plaintiffs are entitled to declaratory and injunctive relief to ensure they are not subjected to unlawful proceedings before the unconstitutionally structured NLRB.

## JURISDICTION AND VENUE

31. This action arises under the Constitution and laws of the United States, such that this Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims that the NLRB's fundamental structure violates the Constitution. *See, e.g., Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

32. This Court has the authority to grant the relief requested, both declaratory and injunctive, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the Administrative Procedure Act, 5. U.S.C. §§ 701-706, and the Court's inherent equitable powers.

33. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to the claim occurred in Tucson, Arizona, where Plaintiffs maintain places of business, including sit-down eating establishments, food to go, and grocery shopping. The NLRB's administrative proceeding alleges that Plaintiffs engaged in various unfair labor practices in Tucson, Arizona, including allegedly unlawful interrogation, surveillance, threats, overly broad work rules,

discharge for participating in protected activity, and refusing to bargain in violation of Sections 8(a)(1), (3), and (5) of the NLRA.

## PARTIES

34. Plaintiffs are comprised of two (2) Arizona Limited Liability Companies and an organization that operate eateries and a grocery facility in Tucson, Arizona.

35. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The NLRA empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. See 29 U.S.C. § 160.

36. Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

37. Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

38. Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

39. Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

40. Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

41. Defendant Sharon Steckler is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against Plaintiffs. She is sued in her official capacity.

## FACTS

42. On September 2, 2021, Inez De La Ossa, Plaintiffs' former employee ("Charging Party"), filed an administrative, unfair labor practice ("ULP") charge against Flora's Market Run with Region 28 of the NLRB in Case 28-CA-282668.

43. Over a period of years from September 2, 2021 through November 7, 2022, the United Food and Commercial Workers International Union, Local 99, AFL-CIO, CLC filed eight (8) ULP charge against Plaintiffs with Region 28 of the NLRB in Cases 28-CA-

7

282452, 28-CA-283442, 28-CA-289271, 28-CA-289927, 28-CA-291800, 28-CA-292322, 28-CA-307337, and 28-CA-307652.

44. On October 23, 2023, the Regional Director of Region 28 of the NLRB issued a Consolidated Complaint and Notice of Hearing.

45. On November 13, 2023, Plaintiffs filed an Answer to the Consolidated Complaint and Notice of Hearing denying the allegations contained therein.

46. On April 12, 2024, Plaintiffs submitted a position statement on the warrant for 10(j) injunctive relief.

47. On August 29, 2024, the Regional Director for Region 28 issued an Amended Consolidated Complaint and Notice of Hearing.

48. On September 24, 2024, the Regional Director for Region 28 of the NLRB issued a Second Amended Consolidated Complaint and Notice that an administrative hearing would occur before an Administrative Law Judge ("ALJ") of the NLRB on October 28, 2024 (the "Hearing").

49. On October 8, 2024, Plaintiffs filed their Answer to Second Amended Consolidated Complaint and Notice of Hearing, where they asserted a variety of affirmative defenses challenging the constitutionality of the NLRB's structure as well as the Hearing scheduled in this matter as violative of the Fifth and Seventh Amendments to the United States Constitution. [Plaintiffs' Answer in the NLRB Proceedings, attached as **Exhibit 2**.]

## CAUSES OF ACTION

### COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

50. Plaintiffs restate and incorporate by reference, as though fully set forth herein, each and every allegation of the preceding paragraphs.

51. As stated above, NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because, among other things, they hold continuing offices through which they preside over adversarial hearings, receive

testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

52. But NLRB ALJs may only be removed by the NLRB "for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a).

53. In turn, members of the MSPB are only removable for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

54. And, under the NLRA, Members of the NLRB are only removable "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

55. Given NLRB ALJs' status as "officers" of an executive agency, the President must have control over the ALJs consistent with his "constitutional obligation to ensure the faithful execution of the laws." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484 (2010).

56. Thus, the NLRB ALJs' having two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the United States Constitution. *See id.* at 492–508.

57. But for the unlawful multi-layered removal protections, the ALJ assigned to Plaintiffs' Hearing (or the NLRB Board Members who bear ultimate responsibility to supervise and exercise control over the ALJ) would face the prospect of removal by the President based on her conduct during the proceedings.

58. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903 (2023) (citation omitted).

59. Accordingly, Plaintiffs are "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Plaintiffs are] subject will be enforced only

by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

60. Plaintiffs will likewise be required to undergo an unconstitutional proceeding before the NLRB and its insufficiently accountable ALJ without interim injunctive relief from this Court.

61. Plaintiffs, for the reasons detailed above, can demonstrate—indeed, have demonstrated—a strong likelihood of success on this claim.

62. Unless the NLRB is enjoined from proceeding against Plaintiffs before an ALJ that is unconstitutionally insulated from President control, Plaintiffs will be irreparably harmed.

63. If the NLRB's Board Members issue a final order against Plaintiffs, even one adopting an ALJ's reasoning and decision, the constitutional injury will be impossible to remedy. The Supreme Court has made abundantly clear that parties, such as Plaintiffs, who are subject to an unconstitutional proceeding before improperly insulated administrative agency officials are without the ability to obtain retrospective relief after the close of the unconstitutional proceedings. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

64. Finally, the harm to Plaintiffs absent declaratory and injunctive relief far outweighs any potential harm (or mere inconvenience) to the NLRB if such relief were granted.

65. The grant of declaratory and injunctive relief on this claim will serve the public interest by protecting constitutional rights of citizens and residents of the United States and the State of Arizona.

**COUNT II – THE NLRB'S BOARD MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL**

66. Plaintiffs restate and incorporate by reference, as though fully set forth herein, each and every allegation of the preceding paragraphs.

10

67. The Members of the NLRB are only removable by the President "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

68. The Members of the NLRB, though, exercise substantial executive power under the Constitution in administering and enforcing the NLRA.

69. For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), authorizes the Board to "petition any United States district court, within any district wherein [an] unfair labor practice in question is alleged to have occurred . . . for appropriate temporary relief or restraining order." 29 U.S.C. 160(j); *see also Muffley ex rel. N.L.R.B. v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009) (ability to seek § 10(j) relief is "clearly prosecutorial"); *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]"); *Osthus v. Whitesell Corp.*, 639 F.3d 841, 848 (8th Cir. 2011) (Colloton, J., concurring) ("the power to seek an injunction is prosecutorial.").

70. On a more general level, the NLRB enforces and implements the NLRA by, for example, determining appropriate bargaining units, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its orders in federal court. 29 U.S.C. §§ 159, 160.

71. The NLRB thus wields substantial prosecutorial, rulemaking, and adjudicative authority.

72. And as the Supreme Court has made clear, even where "the activities of administrative agencies take legislative and judicial forms, they are exercises of—indeed, under our constitutional structure they must be exercises of—the 'executive Power.'" *Seila Law. LLC v. CFPB*, 140 S. Ct. 2183, 2198 n.2 (2020) (citation omitted).

73. The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II. *Id.* at 2191–92.

74. Further, the removal protections for NLRB Board Members are stricter than the provisions at issue in *Humphrey's Executor*, which allowed for removal "for

11

inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. The NLRA, by contrast, only permits removal of an NLRB Member for "neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). The exception to the President's at-will removal power that originated in *Humphrey's Executor* is also inapplicable here.

75. The NLRB's Board Members' strict removal protections, combined with the substantial executive power they wield, violates Article II of the Constitution.

76. Were the NLRB's Board Members not unlawfully protected from removal, they would face the prospect of removal by the President, including based on their conduct in the proceedings against Plaintiffs.

77. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903 (2023) (citation omitted).

78. Thus, on this claim as well, Plaintiffs are "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Plaintiffs are] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

79. Plaintiffs will likewise be required to undergo an unconstitutional proceeding before the NLRB and its insufficiently accountable Board Members without interim injunctive relief from this Court.

80. Plaintiffs, for the reasons detailed above, can demonstrate—and have demonstrated—a strong likelihood of success on this claim.

81. Unless the NLRB is enjoined from proceeding against Plaintiffs before the NLRB and the Board Members, who are unconstitutionally insulated from Presidential control, Plaintiffs will be irreparably harmed.

82. If the NLRB's Board Members issue a final order against Plaintiffs, even one adopting an ALJ's reasoning and decision, the constitutional injury will be impossible to remedy. The Supreme Court has made abundantly clear that parties, such as Plaintiffs, who

1 are subject to an unconstitutional proceeding before improperly insulated administrative
2 agency officials are without the ability to obtain retrospective relief after the close of the
3 unconstitutional proceedings. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

83. Finally, the harm to Plaintiffs absent declaratory and injunctive relief far outweighs any potential harm (or mere inconvenience) to the NLRB if such relief were granted.

84. The grant of declaratory and injunctive relief on this claim will serve the public interest by protecting constitutional rights of citizens and residents of the United States and the State of Arizona.

**COUNT III – THE NLRB ALJ'S ADJUDICATION OF PRIVATE RIGHTS WITHOUT A TRIAL BY JURY VIOLATES THE SEVENTH AMENDMENT**

85. Plaintiffs restate and incorporate by reference, as though fully set forth herein, each and every allegation of the preceding paragraphs.

86. The Seventh Amendment to the United States Constitution provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII.

87. The Seventh Amendment right to trial by jury "is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified," but instead extends to "claims [that] are akin to common law claims." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128, 2139 (2024) (citations omitted).

88. Indeed, the "Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 2128 (citation omitted).

89. The NLRA authorizes the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to

take . . . affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

90. The NLRA permits an award of backpay as "an incident to equitable relief." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937).

91. Moreover, Defendant Jennifer Abruzzo, General Counsel of the NLRB, previously ordered Regional Directors to "request from the Board the full panoply of remedies available to ensure that victims of unlawful conduct are made whole for losses suffered as a result of unfair labor practices." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-06 at 1 (Sept. 8, 2021).

92. Thereafter, Defendant Abruzzo explained that "[a] monetary remedy comprised only of backpay and lost benefits often fails to truly make whole victims of an unfair labor practice," and urged that "Regions should always make sure to seek compensation for any and all damages, direct and consequential, attributable to an unfair labor practice," including housing, medical, or training expenses relating to the allegedly unlawful employment practice." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-07 at 2-4 (Sept. 15, 2021).

93. In response to arguments spurred by the General Counsel's directives, the NLRB recently has proclaimed the authority to issue monetary awards "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of [an employer's] unfair labor practice." *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) enf. denied in part and vacated in part, *Thryv Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024).

94. Indeed, the NLRB now claims to possess the authority to award "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Id.* at 9–10 (citation omitted).

95. Nothing in the NLRA authorizes legal relief, including compensatory damages, nor did Congress "establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct" when it enacted the NLRA. *Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am (UAW-CIO v. Russell)*, 356 U.S. 634, 643 (1958).

96. In substance, this expanded remedy permits a broad range of consequential damages, although the *Thryv* majority sought to avoid that label on the ground that it "refer[s] to a specific type of legal damages." *Id.* at 8.

97. But the NLRB's own words make clear that these new remedies are intended to provide monetary relief for compensatory purposes. *Id.* ("[M]aking employees whole should include, at least, compensating them for direct or foreseeable pecuniary harms resulting from the respondent's unfair labor practice.")

98. Although restitution-based backpay (through which an employer disgorges money that it wrongfully holds and that rightfully belongs to the employee) is categorized as a form of equitable relief, *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), compensatory damages not meant for restitution are not forms of equitable relief.

99. "[M]oney damages," however, such as the consequential damages the NLRB seeks against Plaintiffs here, "are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2128.

100. The Board's newly expanded remedy goes beyond the vindication of public rights, "the public interest in effecting federal labor policy," and instead focuses on "the wrong done to the individual employee." *Terry*, 494 U.S. at 573 (citation omitted).

101. As noted above, in accordance with *Thryv* and the General Counsel's directives, the NLRB seeks through its administrative complaint against Plaintiffs "payment for consequential economic harm incurred" as a result of their alleged unlawful behavior. [Ex. 1.]

102. The Fifth Circuit, in reviewing the NLRB's decision in *Thryv*, noted that the NLRB sought a "novel, consequential-damages-like labor law remedy." *Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024).

103. The fact the NLRB also seeks equitable relief against Plaintiffs does not impact Plaintiffs' Seventh Amendment right to a jury trial. *Jarkesy*, 144 S. Ct. at 2129 ("Since some causes of action sound in both law and equity . . . the remedy [is] the more important consideration.").

104. Nor does the fact that NLRB proceedings are administrative in nature, because "Congress cannot 'conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal.'" *Id.* at 2136 (citation omitted).

105. Without interim injunctive relief from this Court, Plaintiffs' claims will be improperly adjudicated by an ALJ instead of a jury.

106. For the reasons detailed above, Plaintiffs have demonstrated a strong likelihood of success on the merits of this claim.

107. Unless the NLRB is enjoined from proceeding against Plaintiffs before an NLRB ALJ, Plaintiffs will be irreparably harmed.

108. If the NLRB ALJ issues a final order against Plaintiffs, the constitutional injury will be impossible to remedy. The Supreme Court has made abundantly clear that parties, such as Plaintiffs, who are subject to an unconstitutional proceeding before improperly insulated administrative agency officials are without the ability to obtain retrospective relief after the close of the unconstitutional proceedings. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

109. Being subject to unconstitutional agency authority, including "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903 (2023) (citation omitted).

110. Finally, the harm to Plaintiffs absent declaratory and injunctive relief far outweighs any potential harm (or mere inconvenience) to the NLRB if such relief were granted.

111. The grant of declaratory and injunctive relief on this claim will serve the public interest by protecting constitutional rights of citizens and residents of the United States and the State of Arizona.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs hereby request that the Court order the follow relief and enter a judgment:

1. Declaring that:

    a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional;

    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Board Members, including 29 U.S.C. § 153(a) are unconstitutional; and

    c. The NLRB proceedings against Plaintiffs deprive them of their constitutional right to trial by jury.

2. Preliminarily enjoining Defendants from subjecting Plaintiffs to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4. Awarding Plaintiffs their costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

5. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 23rd day of October 2024.

        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Elizabeth M. Soveranez*
    Elizabeth M. Soveranez, SBN 024009
    Kyle R. Broadfoot, SBN 037134
    2415 East Camelback Road, Suite 800
    Phoenix, AZ 85016
    elizabeth.soveranez@ogletree.com
    kyle.broadfoot@ogletree.com

*Attorneys for Plaintiffs Ares Collective Group, LLC, Flora's Market Run, and Plaintiffs Restaurant, LLC*

86170850.v3-OGLETREE